## Clarey v. City of Philadelphia et al.

*Robert T. McCracken,* of Montgomery & McCracken, and *Wolf, Block, Schorr & Solis-Cohen,* for plaintiff.

*J. Morris Yeakle* and *Thomas B. K. Ringe,* for defendants.

MacNeille, J., February 27, 1932.—We are considering preliminary objections to a bill in equity.

Plaintiff, a taxpayer of the City of Philadelphia, seeks to enjoin the use of the Convention Hall by the city for the exhibition of boxing, wrestling and other sporting events promoted or conducted for private gain or profit.

To the first objection that the taxpayer has no standing to maintain a bill, we cannot agree. This principle was discussed in Philadelphia Museum *v.* University of Pennsylvania, 251 Pa. 115, 125. It was there held that if a property dedicated by the city to public use is used contrary to that dedication the taxpayer may maintain a bill. Clarey, a citizen of Philadelphia, avers that the city proposes to lease and permit the use of the Convention Hall by professional promoters for the exhibition of boxing, etc., and charging admission for private profit; that such use will render it less useful for the public purpose for which it exists and will depreciate its value. We have no doubt of the right of the citizen, a taxpayer, to ask for remedy if these acts are beyond the right of the city to do.

Let us now look into the ordinances and the practices of the managers of the hall, as averred in the bill, to see if anything is being done which is beyond their right, or if there is anything with which the court should interfere.

The Convention Hall is built upon land owned in fee by the city, and by an ordinance of July 5, 1928, the city authorized such building — which was erected in pursuance thereof and completed about June, 1931.

April 30, 1931, an ordinance was approved by the mayor, providing for the maintenance, upkeep and use of the said Convention Hall. This ordinance provided for the establishment of a board of managers for the care, maintenance and control thereof. This board is to be appointed by the mayor, with the advice and consent of the council, and to consist of seven members, who, together with the mayor and president of council acting *ex-officio,* shall constitute the board of managers. Thus the city retains its control and authority over the Convention Hall. It has not been placed in private hands.

Section five of the ordinance makes it a duty of the board of managers to make provision for the advantageous use of the hall for the purpose for which it is intended; to take such measures as will ensure its being used on rental for the holding of conventions, exhibitions and other purposes as may be suitable or desirable, either gratuitously or for such consideration as may be

deemed proper to secure the greatest possible use, whenever, in the judgment of the board of managers, cognate or incidental advantages to the city or its inhabitants may be furthered thereby, etc. Section six provides all moneys received from rentals or other use of said building shall be paid into the city treasury.

Undoubtedly the action of the city in building this hall on its land, making preparations for its maintenance and for its administration, constitutes a dedication to public use. The city may make its dedication upon such terms and such conditions as it desires, to the same extent that an individual owner may do, and in dedicating the Convention Hall to public use the city has made its own conditions, exceptions, terms or restrictions.

The dedication of this property to public use is contained in the two ordinances which we have just discussed. These ordinances direct the board of managers to invite exhibitions which are of general attraction to the public and which are beneficial to the citizens, and it is for them to say which exhibitions are beneficial to the citizens. The board of managers is under the control of the executive and legislative branches of the city government. Only in the rare case of the abuse of its discretion could the courts intervene.

The plaintiff further contends that the city in accepting rentals is in fact permitting private parties to make profit out of the enterprise. This is just the limitation that the city placed upon its dedication to public use under the ordinance. It held itself free to accept rental in certain instances in the discretion of the board. This the city may do. We cannot say that the city may not rent freely because of competition with private enterprises. It may be a very proper public policy to have no such competition, but there is nothing in the law that prevents the city from renting its own land to private businesses.

Upon the bill as filed we think the objections are well taken and must be sustained.

Leave is granted to the complainant to amend within thirty days—otherwise the bill, on motion, will be dismissed.